**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Cody Keith, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IES Communications, LLC,<br><br>Defendant. | No. CV-25-02452-PHX-SHD<br><br>**ORDER** |

Pending is Defendant IES Communications, LLC ("IES Communications," or "IES") Motion to Dismiss Plaintiff Cody Keith's Class Action Complaint ("Motion"). (Doc. 18.) For the following reasons, IES Communications' Motion will be **denied** in part and **granted** in part.

## I. BACKGROUND

IES Communications is a national technology infrastructure provider with more than 10,500 employees across over 90 locations in the United States, offering electrical, mechanical, and communications contracting services. (Doc. 1 at ¶ 21.) IES Communications maintains the personal identifying information ("PII") of its current and former employees, including Plaintiff Cody Keith ("Keith"). (*Id.* at ¶¶ 2, 22.) Employee PII includes names, dates of birth, addresses, payroll information, and Social Security numbers. (*Id.*)

On or around March 7, 2025, an unauthorized actor gained access to IES's Information Technology ("IT") infrastructure (the "Data Breach"). (*Id.* at ¶¶ 2 n.1, 7, 29.)

IES Communications discovered the intrusion approximately ten days later, on March 17, 2025. (*Id.* at ¶ 7.) A ransomware group known as "Chaos" claimed credit for the attack, asserting that it exfiltrated approximately one terabyte of data from IES Communications and listing IES Communications on its "dark leak site." (*Id.* at ¶ 8.) On or around July 3, 2025, Keith received a letter from IES Communications notifying him that his PII—including his first and last name, date of birth, address, payroll information, and Social Security number—may have been compromised in the Data Breach. (*Id.* at ¶ 2; Doc. 18 at 2.)

Keith alleges that, due to the Data Breach, he and others similarly situated have suffered lost time spent addressing the data breach, diminution in the value of their PII, and emotional distress. (Doc. 1 at ¶¶ 79–93.) He also alleges that they are at continuing risk of fraud and identity theft. (*Id.* at ¶ 93.) Keith further alleges that he has experienced a significant increase in spam calls and texts soliciting him to provide his PII for jobs he never applied to. (*Id.* at ¶ 86.)

Keith filed this putative class action on behalf of himself and all persons whose PII was compromised in the Data Breach or who otherwise suffered harm as a result of it. (*Id.* at ¶ 94.) He proposes the following Class definition: "All persons whose PII was compromised in the Data Breach or have otherwise suffered harm because of the Data Breach" (the "Class"). (*Id.* at ¶ 95.) Keith's complaint ("Complaint") asserts five causes of action on behalf of himself and the Class: (1) negligence/negligence per se; (2) breach of implied contract; (3) invasion of privacy; (4) unjust enrichment; and (5) declaratory judgment and injunctive relief. (*Id.* at ¶¶ 107–182.) Keith seeks damages, restitution, and injunctive relief requiring IES to, among other things, strengthen its data-security systems, submit to future annual audits, implement written cybersecurity policies, and continue providing credit-monitoring services to the class. (*Id.* at ¶ 119; *id.* at pp. 33–36.)

IES Communications moved to dismiss the Complaint in its entirety under Rules 12(b)(1) and 12(b)(6). (Doc. 18.) The Parties fully briefed the Motion.[1] (Docs. 22, 23.)

---

[1] I find this motion suitable for decision without oral argument. *See* LRCiv 7.2(f).

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). The party invoking federal jurisdiction bears the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A challenge to subject matter jurisdiction may be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). IES Communications presents a facial attack to the Complaint. (Doc. 18 at 8–10.) A facial attack "accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Leite*, 749 F.3d at 1121 (quotation marks omitted). Courts resolve facial attacks under the same standard as a motion to dismiss under Rule 12(b)(6). *Id*. That is, "[a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.*

A plaintiff invoking federal jurisdiction also bears the burden of establishing Article III standing, which requires that the plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). That injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339 (quotation marks omitted). A threatened future injury must be "certainly impending," or there must be a "substantial risk" that the harm will occur to constitute an injury in fact; "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013) (citation modified).

### B. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A court need not accept as true "conclusory statements" or "legal conclusions." *Id.* A court may dismiss a complaint "as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted).

## III. DISCUSSION

IES Communications argues that Keith lacks standing to seek prospective injunctive and declaratory relief, and that each of his five claims fails as a matter of law. (Doc. 18 at 8–19.) I address standing first, because it is a threshold jurisdictional question, and then the sufficiency of each claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

### A. Article III Standing

Article III standing is assessed separately for each form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)."). A plaintiff who has standing to seek damages for a completed injury does not, for that reason alone, have standing to pursue prospective injunctive or declaratory relief premised on a different, future injury. *See id.* An individual who is "exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *Id.* at 435.

Here, Keith seeks both damages for a completed injury and prospective relief. IES Communications does not contend that Keith lacks standing to seek damages. I have an independent obligation to ensure that I have subject matter jurisdiction for each of Keith's claims and requested forms of relief. *See* Fed. R. Civ. P. 12(h)(3). Keith has adequately alleged an injury in fact sufficient to support a claim for damages. He alleges that his data was stolen as a result of the Data Breach. (Doc. 1 at ¶¶ 1–2.) He also alleges that he has

suffered concrete harm as a result. (See Doc. 1 at ¶¶ 1, 79, 83, 86, 93 (alleging that he receives increased spam calls, lost time spent trying to protect his information, and suffers from emotional distress).) And his allegations trace that harm to IES Communications' conduct. (*Id.* at ¶ 1.) At the pleading stage, that is enough. *See Spokeo,* 578 U.S. at 338 (at the pleading stage, plaintiffs must "clearly allege facts demonstrating each element" of standing).

Keith also seeks injunctive relief in Count 1, Count 5, and the prayer for relief, and requests a judgment requiring IES Communications to (1) strengthen its data-security systems, (2) submit to future audits, (3) implement written cybersecurity policies, and (4) continue credit-monitoring services. (*Id.* at ¶¶ 119, 175–182; *id.* at pp. 33–36). As to Count 5 of his Complaint, Keith seeks a judgment declaring that IES Communications "owed, and continues to owe" a legal duty to employ reasonable data security and to notify affected individuals; that it "breached, and continues to breach," that duty; and that the breach "continues to cause harm." (*Id.* at ¶ 178.) Because these requests are not one form of relief, standing must be shown for each. *TransUnion*, 594 U.S. at 431.

**1. Keith Lacks Standing to Compel Stronger Systems, Future Audits, Written Policies, and Declaratory Relief**

IES Communications argues that Keith alleges only a completed injury and does not allege that another breach is certainly impending or presents a substantial risk of occurring. (Doc. 18 at 8–10.) As to the first three forms of requested injunctive relief, IES Communications is correct.

Those three requests are aimed at preventing a future intrusion, not at the Data Breach that already occurred. Allegations of possible future injury are not enough. *Clapper*, 568 U.S. at 409. Keith alleges that a breach has already happened. He does not allege facts showing that another breach of IES Communications' systems is certainly impending. His own pleading frames the harm these measures would address as injury "in the event of another breach." (Doc. 1 at ¶ 180.) That is a possible future injury, not an

imminent one.

Keith responds that the Ninth Circuit, in both *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010), and *In re Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018), established that the theft of sensitive personal information itself is an injury in fact, including for purposes of obtaining forward-looking relief, because it creates a substantial risk of identity theft. (Doc. 22 at 3–7.) That response does not establish standing to compel stronger systems, future audits, or written cybersecurity policies.

*Krottner* and *Zappos* address a different injury. In *Krottner*, employees whose names, addresses, and Social Security numbers were stored on a stolen laptop alleged a credible threat of real and immediate harm from that theft. 628 F.3d at 1140–43. The court cautioned that, had the allegations been more conjectural or hypothetical, such as "if no laptop had been stolen, and [the plaintiffs] had sued based on the risk that it would be stolen at some point in the future," the court "would find the threat far less credible." *Id*. at 1143. The first three forms of injunctive relief that Keith requests rest on a less credible risk: that IES Communications' systems might be breached again.

*Zappos* likewise addressed standing arising from a completed theft of personal information, not standing to oversee a defendant's future compliance. 888 F.3d at 1023, 1026–29.[2] There, the Ninth Circuit held that plaintiffs whose PII was exposed in a breach had standing based on a substantial risk of identity theft. *Id*. at 1027–28. Neither case holds that theft of data, without more, confers standing to enjoin a defendant to reform its systems to prevent future harm.

Nor would those three forms of relief redress the injury Keith has alleged. Standing requires that the injury be "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Strengthening systems IES Communications still controls, auditing those systems, or requiring written

---

[2] *Zappos* was abrogated in part as recognized by *Healy v. Milliman, Inc.*, 164 F.4th 701, 708 (9th Cir. 2026). The court in *Healy* held that *TransUnion* abrogated *Zappos* only insofar as Zappos "would have permitted unnamed class members to go without demonstrating standing at trial or in any later claims process." *Id*.

policies would not retrieve data already outside its possession, and would not prevent misuse of that data. *TransUnion* permits injunctive relief only "to prevent the harm from occurring," and only when the risk of that harm is sufficiently imminent and substantial. 594 U.S. at 435. A past injury does not confer standing to enjoin hypothetical future misconduct. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983).

The same defect defeats the prospective declaration Keith seeks—a judgment declaring that IES Communications continues to owe and continues to breach a duty to employ reasonable data security, and that the continuing breach continues to cause harm. (Doc. 1 at ¶ 178.) That requested declaration is the declaratory counterpart of the system-reform injunction. It does not redress the completed theft, and it is not tied to a certainly impending or substantially likely future breach.

Keith therefore lacks Article III standing to seek injunctive or declaratory relief requiring IES Communications to (1) strengthen its data-security systems, (2) submit to future audits, and (3) implement written cybersecurity policies.

**2. Keith Has Standing to Seek Continued Credit Monitoring**

Credit monitoring is different from the other forms of requested injunctive relief. The injury that relief would remedy is not a speculative second breach. It is the substantial risk of identity theft from personal information that has already been stolen.

*Krottner* held that theft of names, addresses, and Social Security numbers creates "a credible threat of real and immediate harm" sufficient for Article III injury in fact. 628 F.3d at 1143. *Zappos* reaffirmed that rule and applied it to a hacking incident. 888 F.3d at 1023, 1026–27. The court found the sensitivity of the stolen information sufficient, even for plaintiffs who alleged no misuse beyond the theft, because the stolen information "gave hackers the means to commit fraud or identity theft." *Id.* at 1027–29. *TransUnion* confirms that a person exposed to a risk of future harm may pursue forward-looking injunctive relief to prevent that harm from occurring, if the risk is sufficiently imminent and substantial. *TransUnion*, 594 U.S. at 435.

Continued credit monitoring is relief of that kind. It is directed at detecting and

mitigating identity theft from data already in criminal hands, which is the harm *Krottner* and *Zappos* treat as real and immediate. *Krottner*, 628 F.3d at 1143; *Zappos*, 888 F.3d at 1027–29; *see* Doc. 1 at ¶¶ 12–13, 82, 119. Keith alleges that PII, such as Social Security numbers, were stolen in the Data Breach. (Doc. 1 at ¶¶ 2, 78, 81.) At the pleading stage, that breach gives rise to a substantial and imminent risk of future identity theft, not a speculative chain of possibilities. *See Zappos*, 888 F.3d at 1028–29; *Krottner*, 628 F.3d at 1143. The court in *Zappos* also recognized that injunctive relief of this kind can potentially redress the threatened injury by helping plaintiffs monitor their credit. 888 F.3d at 1030. Keith therefore has standing to ask that IES Communications continue credit-monitoring services.

The Motion is therefore granted in part and denied in part on standing. It is granted insofar as Keith seeks injunctive or corresponding declaratory relief requiring IES Communications to strengthen its data-security systems, submit to future audits, or implement written cybersecurity policies. It is denied insofar as it seeks dismissal for lack of standing to pursue damages or continued credit-monitoring services. This conclusion does not resolve whether Keith's alleged injuries are cognizable for purposes of establishing the damages element of his negligence claim, or whether Count 5 may proceed as an independent cause of action rather than as a request for a remedy. Those issues are addressed below.

### B. Keith Fails to State a Claim for Negligence (Count 1)

To state a claim for negligence under Arizona law, a plaintiff must plead "(1) the existence of a duty recognized by law requiring defendants to conform to a certain standard of care; (2) defendants' breach of that duty; (3) a causal connection between the breach and plaintiffs' resulting injury; and (4) actual damages." *Delci v. Gutierrez Trucking Co.*, 275 P.3d 632, 634 (Ariz. Ct. App. 2012). IES Communications challenges duty and damages. (Doc. 18 at 11–14.) Both challenges succeed, and either is independently fatal to Count 1

as pled.

**1. Duty**

Under Arizona law, a duty arises from a special relationship or from public policy. *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 829 (Ariz. 2018). It is not presumed, and the plaintiff bears the burden of proving it. *Id.* at 827. Foreseeability is not a factor in that determination. *Gipson v. Kasey*, 150 P.3d 228, 231 (Ariz. 2007). Arizona has "explicitly declined to recognize special relationships created by foreseeability, that is, where it is foreseeable that a defendant's conduct would impact the victim." *Quinalty v. FocusIT LLC*, 2024 WL 5223587, at *4 (D. Ariz. Dec. 26, 2024) (citing *Cal-Am Props. Inc. v. Edais Eng'g Inc.*, 509 P.3d 386, 390 (Ariz. 2022)).

Keith alleges that IES Communications owed him a duty of care because it collected and stored his PII and held a "superior position" to prevent the Data Breach. (Doc. 1 at ¶ 112.) That allegation describes a duty arising from foreseeability. It does not identify a recognized special relationship, and it does not identify an Arizona statute or common-law rule requiring an employer to prevent a third party's criminal intrusion into its systems. To support his argument that IES Communications owed Keith a duty to protect his PII, Keith cites authorities from other circuits that apply other states' laws, (Doc. 22 at 7–8,) but these authorities do not supply the missing duty under Arizona law.

Keith also attempts to satisfy the element of duty through alleging negligence per se. Although he titles his Count 1 "Negligence/Negligence Per Se," he asserts that he does not bring negligence per se as an independent claim. (Doc. 22 at 11.) Rather, he argues that two statutes provide the standard of care. (*Id.*) Those two statutes are: Section 5 of the Federal Trade Commission Act (the "FTCA"), which prohibits "unfair . . . practices in or affecting commerce," 15 U.S.C. § 45, and Arizona's Data Breach Notification Law, Ariz. Rev. Stat. §§ 18-551 and 18-552.[3] (Doc. 1 at ¶¶ 114, 118.)

---

[3] Keith raises Arizona's Data Breach Notification Law in his Complaint, (Doc. 1 at ¶ 118) but in his response to the Motion, he discusses the FTCA and HIPAA. (Doc. 22 at 12.) Because Keith made no mention or claim of HIPAA in the Complaint, I treat the mention of HIPAA in the response as a typo.

Negligence per se is "not a cause of action separate from common law negligence." *Rosales v. Rollag*, 2024 WL 4333698, at *5 (D. Ariz. Sept. 27, 2024). "It is a doctrine under which a plaintiff can establish the duty and breach elements of a negligence claim based on a violation of a statute that supplies the relevant duty of care." *Johnson v. Yuma Reg'l Med. Ctr.*, 769 F. Supp. 3d 936, 954 (D. Ariz. 2024); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 47 (D. Ariz. 2021). The doctrine therefore helps Keith only if one of the cited statutes supplies a duty. Neither statute does.

Courts in this District have repeatedly held that the FTCA does not create an affirmative duty, or evidence of a duty, to protect individuals from data breaches. *Johnson*, 769 F. Supp. 3d at 955; *Gannon v. Truly Nolen of Am., Inc.*, 2023 WL 6536477, at *2 (D. Ariz. Aug. 31, 2023). The contrary authorities Keith cites, (Doc. 22 at 12,) do not change the result. *Weisenberger v. Ameritas Mut. Holding Co.*, 597 F. Supp. 3d 1351 (D. Neb. 2022), and *In re Arby's Rest. Grp. Inc. Litig.*, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018), arise outside this Circuit, do not apply Arizona law, and expressly limit their analysis to the law of the forum state.

Keith's reliance on Arizona's Data Breach Notification Law, (Doc. 1 at ¶ 118,) fares no better. That statute requires certain individuals who maintain PII to notify those affected by a security system breach within forty-five days. *See* Ariz. Rev. Stat. § 18-552(B). The Legislature, however, specified that only the attorney general can enforce a knowing and willful violation of the statute. *Id.* § 18-552(L). A statute that does not provide a private right of action cannot supply the duty of care for a private negligence per se claim. *Johnson*, 769 F. Supp. 3d at 955 (finding that statutes that provide their own enforcement mechanisms and do not create private rights of action do not provide evidence of a duty). Keith therefore cannot rely on Arizona's Data Breach Notification Law to support an independent negligence per se claim.

Because Keith fails to allege a legally cognizable duty, his negligence claim fails, and the negligence per se theory fails with it.

### 2. Actual Damages

Even if Keith alleged a legally cognizable duty, his negligence claim fails because he has not adequately alleged cognizable damages. Arizona law requires that negligence damages be "actual and appreciable, non-speculative, and more than merely the threat of future harm." *Johnson*, 769 F. Supp. 3d at 947 (quoting *CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.*, 7 P.3d 979, 982–83 (Ariz. Ct. App. 2000)).[4]

Keith alleges four categories of damages: (1) lost time and an increased risk of future harm; (2) loss of the benefit of his bargain; (3) diminution in the value of his PII; and (4) emotional distress. (Doc. 1 at ¶¶ 125–126.) Each category fails under settled Arizona authority.

First, "general allegations of lost time are not cognizable injuries," and "threats of future harm, on their own, are not cognizable negligence injuries." *Johnson*, 769 F. Supp. 3d at 949, 950; *see also Griffey*, 562 F. Supp. 3d at 46. Keith alleges that he spent time changing passwords and monitoring his accounts. (Doc. 1 at ¶¶ 79–80.) He does not allege any tangible out-of-pocket loss and thus does not satisfy the standard of "actual and appreciable" damages. *Johnson*, 769 F. Supp. 3d at 949–50.

Second, Keith contends that he and the Class "conferred a benefit, including their valuable PII, on [IES Communications] as a condition of employment." (Doc. 1 at ¶ 165.) He further alleges that "[i]n so conferring this benefit, [they] understood that part of the benefit [IES Communications] derived from the PII would be applied to data security efforts to safeguard the PII. (*Id.*) Keith does not, however, adequately allege any representation or agreement under which his wages were tied to cybersecurity measures. Even if Keith adequately alleged such an agreement, benefit-of-the-bargain damages are a contract measure, not a tort measure, and "successful tort plaintiffs are not entitled to have

---

[4] "[P]leading damages sufficient for standing does not necessarily establish compensable damages" for a negligence claim. *Johnson*, 769 F. Supp. 3d at 948 (D. Ariz. 2024) (citation omitted); *see also Doe v. Chao*, 540 U.S. 614, 624–25 (2004) (explaining establishing injury-in-fact may open the courthouse door for standing purposes, but it does not necessarily create a cause of action of damages absent more than abstract injuries).

damages computed on a contract." *S. Union Co. v. Sw. Gas Corp.*, 180 F. Supp. 2d 1021, 1040 (D. Ariz. 2002). Courts in this District also require that such damages be tied to a specific representation or contractual term, not a generalized "understanding." *See Johnson*, 769 F. Supp. 3d at 948 (rejecting benefit of the bargain damages because plaintiffs "ma[de] no specific allegations that they intended for part of the price they paid for services was to be used to provide adequate security"); *see also Durgan v. U-Haul Int'l Inc.*, 2023 WL 12140653, at *5 (D. Ariz. July 28, 2023) (finding benefit of the bargain damages unwarranted when "the Complaint [did] not allege that U-Haul made promises regarding data security to induce Plaintiffs to contract for its services"). Keith's benefit-of-the-bargain theory thus fails to satisfy the damages requirement for a negligence claim.

Third, Keith's diminution-in-value theory also fails under Arizona law. Keith argues that he need not assign a dollar value to his compromised data at the pleading stage, and that it is enough to allege a market for stolen PII, including that such information can "sell for as much as $363 per record" and that his information's value was diminished by its alleged "release onto the Dark Web." (Doc. 22 at 11; Doc. 1 at ¶¶ 60, 65, 68–71, 75.)

Generalized allegations of purported black-market value do not establish that a plaintiff's own information actually lost value but rather "call[] for speculation." *Johnson*, 769 F. Supp. 3d at 947–48; *see Griffey*, 562 F. Supp. 3d at 46. A plaintiff asserting a diminution-in-value theory "must establish both the existence of a market for [their] personal information and an impairment of [their] ability to participate in that market." *Johnson*, 769 F. Supp. 3d at 947 (citing *Griffey*, 562 F. Supp. 3d at 46).

Keith alleges neither. He does not allege that he ever sold, attempted to sell, or intended to sell his PII, or that the Data Breach impaired any ability to do so. *See id*. at 948. His general allegations about the value of PII on the black market, (Doc. 1 at ¶¶ 64–65, 75), cannot override those requirements. *See Griffey*, 562 F. 3d Supp. at 46 (declining "to recognize the "dark web" as a legitimate market by which individuals may sell their information"). The diminution-in-value theory therefore fails and cannot support a negligence claim.

Fourth, Keith's emotional-distress allegations lack the physical consequence Arizona law requires. Arizona does not permit "recovery for mental disturbance unless physical injury, illness, *or* other physical consequence accompany it, *or* physical harm develops as a result of the plaintiff's emotional distress." *Johnson*, 769 F. Supp. 3d at 949–50 (quoting *Dehart v. Johnson & Johnson*, 562 F. Supp. 3d 189, 198 (D. Ariz. 2022)). Keith alleges only that he and the Class are "forced to live with the stress and anxiety" that their PII "may be disclosed," and that they have suffered "anxiety, stress, emotional distress, loss of privacy, and are at an increased risk of future harm." (Doc. 1 at ¶¶ 92–93.) He alleges no physical injury, illness or physical consequence. His generalized allegations of stress and anxiety are insufficient. *Johnson*, 769 F. Supp. 3d at 950.

Keith therefore has not alleged cognizable damages under any of the four theories he advances. Count 1 will be dismissed.

**C. Keith Fails to State a Claim for Breach of Implied Contract (Count 2)**

A valid contract, whether express or implied, requires "offer, acceptance of the offer, consideration, sufficient specification of terms so that the obligations involved can be ascertained," and an intent to be bound. *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1153 (D. Ariz. 2016). Keith's implied-contract claim fails for two reasons.

First, Keith fails to allege sufficiently specific terms. He points to IES Communications' Privacy Policy, which states that IES Communications "will not disclose Users' PII to third parties without [] permission," except for certain business purposes. (Doc. 1 at ¶ 28.) That provision addresses voluntary third-party disclosures, but it does not state what, if any, data-security measures IES Communications would employ to prevent unauthorized criminal intrusion. General privacy-policy language is insufficient to supply the specific terms of an implied-in-fact contract to maintain reasonable data security. *Johnson*, 769 F. Supp. 3d at 955; *Griffey*, 562 F. Supp. 3d at 51; *Durgan*, 2023 WL 12140653, at *6.

Second, Keith fails to allege consideration. "[A] promise to perform a pre-existing duty is insufficient consideration." *Griffey*, 562 F. Supp. 3d at 52 (quoting *Hisel v.*

*Upchurch*, 797 F. Supp. 1509, 1521 (D. Ariz. 1992)). Keith alleges that he provided his personal information as a condition of employment. (Doc. 1 at ¶¶ 128–131.) The exchange he describes is personal information for employment, which he received. (*Id.* at ¶ 1.) Keith also alleges that IES Communications had a duty under state and federal law to use "adequate cybersecurity measures." (Doc. 1 at ¶ 130.) But he does not allege that IES Communications promised to do anything beyond what it was already legally obligated to do. A privacy policy that merely restates existing legal obligations cannot supply consideration for an implied contract. *In re Banner Health Data Breach Litig.*, 2017 WL 6763548, at *4 (D. Ariz. Dec. 20, 2017).

Because there is no enforceable implied contract between Keith and IES Communications, Keith's claim for breach of the implied covenant of good faith and fair dealing likewise fails. *In re Banner Health*, 2017 WL 6763548, at *5. Count 2 will therefore be dismissed.

**D. Keith Fails to State a Claim for Invasion of Privacy (Count 3)**

Under Arizona law, invasion of privacy by intrusion requires that a defendant "intentionally intrude[], physically or otherwise, upon the solitude or seclusion of another or his private affairs," in a manner that "would be highly offensive to a reasonable person." *Feins v. Goldwater Bank NA*, 2022 WL 17552440, at *5 (D. Ariz. Dec. 9, 2022) (quoting *Hart v. Seven Resorts Inc.*, 947 P.2d 846, 853 (Ariz. Ct. App. 1997)). The intrusion must be intentional. *Steinaker v. Sw. Airlines, Co.*, 2021 WL 11730573, at *5 (D. Ariz. Mar. 11, 2021).

Keith does not allege that IES Communications acted intentionally. He alleges that Chaos, an independent criminal actor, hacked into IES Communications' systems and obtained his PII. (Doc. 1 at ¶¶ 7–8.) His theory of IES Communications' liability is that IES Communications inadequately safeguarded that information and maintained it in a "negligent and/or reckless" manner. (*Id.* at ¶¶ 5–6.) Keith's argument is therefore based on a failure to prevent a third party's crime. His allegations describe negligent inaction, not an intentional intrusion by IES Communications. *See Bozek v. Ariz. Lab. Force Inc.*,

2025 WL 264174, at *6 (D. Ariz. Jan. 22, 2025). Negligence is not an intentional intrusion. *See Feins*, 2022 WL 17552440, at *5–6.

Even if the failure to take proper security precautions was itself intentional, the disclosure here was the work of hackers in a single breach, and Keith does not allege that IES Communications intended for any third party to widely disseminate his information. *See Bozek*, 2025 WL 264174, at *6; *see also Feins*, 2022 WL 17552440, at *5–6. His argument that the "ubiquity" of data breaches made IES Communications "substantially certain" that its security failures would result in a breach, (Doc. 22 at 14,) does not supply the missing intent required to adequately allege an invasion of privacy claim. *Feins*, 2022 WL 17552440, at *5–6; *Bozek*, 2025 WL 264174, at *6.

Count 3 will therefore be dismissed.

**E. Keith Fails to State a Claim for Unjust Enrichment (Count 4)**

"Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Griffey*, 562 F. Supp. 3d 34, 48 (quoting *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002)). A plaintiff must plead "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy." *Id.* Keith's claim fails at the first element.

Keith does not allege that he paid IES Communications for services. He alleges that he provided his PII as a condition of employment. (Doc. 1 at ¶¶ 108, 128, 165.) His enrichment theory is that IES Communications "enriched itself by saving the costs [it] reasonably should have expended on data security measures," and that it "calculated to avoid its data security obligations" by "utilizing cheaper, ineffective security measures." (*Id.* at ¶¶ 166–167.) He also alleges that he understood part of the benefit IES Communications derived from his PII would be applied to data security. (*Id.* at ¶ 165.)

*Griffey* considered the same theory. The plaintiffs in that case alleged that they provided money or labor so the defendant could fund adequate security, and that the

defendant enriched itself by spending less than it should have on security measures. *Griffey*, 562 F. Supp. 3d at 48. The court held that this theory does not establish an enrichment unless the plaintiff plausibly alleges that the defendant's security was inadequate. *Id*. at 48–49. A breach, standing alone, does not show that the system was inadequate, because an adequate system and a successful intrusion are not mutually exclusive. *Id*. at 50. A list of industry standards, without allegations identifying which standards the defendant failed to meet and how its systems fell below them, is also conclusory. *Id*. The court explained that, without sufficient allegations that the defendant's security was inadequate, "there is no way to establish…that [defendant] was enriched, that Plaintiffs were impoverished, or that there was a connection between the enrichment and impoverishment." *Id*.

The same is true here. Keith alleges that Chaos accessed IES Communications' systems and claimed to have taken one terabyte of data. (Doc. 1 at ¶¶ 7–8.) That intrusion does not establish that the security systems were inadequate. *Griffey*, 562 F. Supp. 3d at 49. Without a proper allegation that IES Communications' systems were inadequate, there is no way to establish on the pleadings that IES Communications was enriched, that Keith was impoverished, or that there was a connection between the two. *Griffey*, 562 F. Supp. 3d at 50.

Count 4 will therefore be dismissed.

### F. Declaratory Judgment and Injunctive Relief (Count 5) are Not Independent Causes of Action

Independent of the standing ruling discussed above, *supra* Section III.A, Count 5 fails for the additional reason that declaratory judgment and injunctive relief are remedies, not standalone causes of action. The Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), does not itself confer federal subject matter jurisdiction or create a substantive cause of action; it merely provides a form of relief with respect to claims over which the [C]ourt has independent subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950); *see also Colonial Sav., FA v. Gulino*, 2010 WL

1996608, at *8 (D. Ariz. May 19, 2010). Likewise, injunctive relief is a remedy available upon a showing of liability on an underlying cause of action, not a freestanding claim. *Lorona v. Ariz. Summit Law Sch., LLC*, 151 F. Supp. 3d 978, 997 (D. Ariz. 2015).

Because Count 5 does not assert any independent substantive claim, it is dismissed with prejudice as a standalone claim.

## IV. Leave to Amend

Leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), but dismissal without leave to amend is appropriate when amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). Amendment would be futile as to Keith's standing to seek injunctive or declaratory relief requiring IES Communications to strengthen its data-security systems, submit to future audits, or implement written cybersecurity policies because Keith cannot plead facts showing that another breach is certainly impending or presents a substantial risk of occurring, rather than merely possible. Amendment of Count 5 would likewise be futile because declaratory judgment and injunctive relief are remedies rather than independent causes of action. Because the other deficiencies identified could potentially be cured by amendment, I will grant Keith leave to amend his remaining claims.

## V. CONCLUSION

Keith has Article III standing to pursue damages and continued credit-monitoring services. He lacks standing to seek injunctive or declaratory relief requiring IES Communications to strengthen its data-security systems, submit to future audits, or implement written cybersecurity policies. Each of his five causes of action fails to state a claim under Rule 12(b)(6) for the reasons set forth above. Keith will, however, be granted leave to amend as to his claims, except as to Count 5, which may not be asserted as a standalone claim.

Accordingly,

**IT IS ORDERED** that IES Communications' Motion to Dismiss, (Doc. 18), is granted as follows:

(1) Keith's requests for injunctive or declaratory relief requiring IES Communications to strengthen its data-security systems, submit to future audits, or implement written cybersecurity policies are dismissed without leave to amend.

(2) Keith's negligence claim (Count 1) is dismissed with leave to amend.

(3) Keith's breach of implied contract claim (Count 2) is dismissed with leave to amend.

(4) Keith's invasion of privacy claim (Count 3) is dismissed with leave to amend.

(5) Keith's unjust enrichment claim (Count 4) is dismissed with leave to amend.

(6) Keith's standalone claim for declaratory and injunctive relief (Count 5) is dismissed without leave to amend.

**IT IS FURTHER ORDERED** that any amended pleading shall be filed by no later than **October 21, 2026**.

**IT IS FINALLY ORDERED** that if Plaintiff fails to file an amended complaint by **October 21, 2026** the Clerk of Court shall enter judgment accordingly and close this case without further order from the Court.

Dated this 7th day of October, 2026.

Honorable Sharad H. Desai
United States District Judge